## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DONNA MARIE BOONE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **Civil Action No.   ADC-15-2896** |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| Acting Commissioner, | * | |
| Social Security Administration, | * | |
| | * | |
| **Defendant.** | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

### MEMORANDUM OPINION GRANTING DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

On September 24, 2015, Donna Marie Boone ("Plaintiff") petitioned this court to review

the Social Security Administration's ("SSA") final decision to deny her claim for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the

Complaint"). After consideration of the Complaint and each parties cross-motions for summary

judgment (ECF Nos. 18, 21, and 22), the Court finds that no hearing is necessary. *See* Loc. R.

105.6 (D. Md. 2014). In addition, for the reasons that follow, Plaintiff's Motion for Summary

Judgment (ECF No. 18) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 21)

is GRANTED, and the decision of the Social Security Administration is AFFIRMED.

### CASE BACKGROUND

On December 20, 2011, Plaintiff filed a Title XVI application for supplemental security

income alleging disability beginning on May 11, 2011. Her claim was denied initially and upon

reconsideration on June 5, 2012 and January 9, 2013, respectively. Subsequently, on February

19, 2013, Plaintiff filed a written request for a hearing and, on May 1, 2014, a hearing was held

before an Administrative Law Judge. On July 23, 2014, the ALJ rendered a decision denying

Plaintiff's claims for SSI. *See* ECF No. 12. Thereafter, on August 15, 2014, Plaintiff requested review of the decision, and on August 19, 2015, the Appeals Council affirmed the ALJ's decision. Thus, the decision rendered by the ALJ at the hearing became the final decision of the Commissioner. See C.F.R. § 416.1481; see also *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On September 24, 2015, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's final decision.[1] On April 29, 2016, Plaintiff filed a Motion for Summary Judgment. On August 10, 2016, Defendant filed a Motion for Summary Judgment. On September 1, 2016, Plaintiff filed a Response to Defendant's Motion for Summary Judgment. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement, Defendant's Motion for Summary Judgment, and Plaintiff's Reply.

## STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). However, the Court does not conduct a de novo review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *see also Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a de novo review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence."). Therefore, the issue before the

---

[1] On September 30, 2016, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.").

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d at 653 (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB, a claimant must establish that he is under disability within the meaning of the Social Security Act. The term "disability," for purposes of the Social Security Act, is defined as the "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or has lasted or can be expected to last for a continuous period of not less than 12 months." 42
U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be
determined to be under disability where "his physical or mental impairment or impairments are
of such a severity that he is not only unable to do his previous work but cannot, considering his
age, education, and work experience, engage in any other kind of substantial gainful work which
exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Social
Security Act, the Commissioner follows the five-step evaluation process outlined in the Code of
Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24
(2003). The evaluation process is sequential, meaning that, "[i]f at any step a finding of disability
or non-disability can be made, the [Commissioner] will not review the claim further." *Barnhart
v. Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner considers the claimant's work activity to determine if the
claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i),
416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is
not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the Commissioner considers whether the claimant has a "severe medically
determinable physical or mental impairment [or combination of impairments] that meets the
duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does
not have a severe impairment or combination of impairments, then the claimant is not disabled.
20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).

At step three, the Commissioner considers the medical severity of the impairment. 20
C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the

4

presumptively disabling impairments listed in the Code of Federal Regulations, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

At step four, the Commissioner will assess the claimant's residual functional capacity ("RFC") to determine the claimant's ability to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

At steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also Radford*, 734 F.3d at 291. At step five, the burden shifts to the Commissioner to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012); *See also Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found, at step one, that Plaintiff did not engage in substantial gainful activity since the application date of December

20, 2011. ECF No. 12 at 18. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar and cervical degenerative disc disease (DDD), depression, anxiety, and substance abuse. *Id.* At step three, the ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt P, App. 1. *Id.* at 20. At step four, the ALJ determined Plaintiff's residual functional capacity and concluded that Plaintiff was unable to perform any past relevant work.[2] However, at step five, the ALJ determined that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 27. Thus, the ALJ concluded that, "[a] finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule [Medical-Vocational Rule 202.21]." *Id.* at 28.

## PLAINTIFF'S ARGUMENTS RAISED

In the present case, Plaintiff contends that the ALJ's denial of disability benefits was not supported by substantial evidence. Plaintiff raises two arguments in support of that contention: (1) that the ALJ failed to comply with the Treating Physician Rule; and (2) that the ALJ failed to properly evaluate Plaintiff's impairment at step three of the sequential evaluation pursuant to 20 C.F.R. Pt. 404, Subpt P, App. 1, § 1.04A. Each of Plaintiff's arguments lack merit and are addressed below.

## DISCUSSION

---

[2] ECF No. 12 at 23 ("[Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.967(b) except frequently climb ramps/stairs, kneel, balance, crouch, crawl, occasionally climb ladders/ropes/scaffolds or stoop, and limited to simple, unskilled work, work not at a production pace, meaning paid by the piece or working at an assembly line, low stress work defined as only occasional changes in the work setting, should in general avoid concentrated exposure to temperature extremes and vibration, and occasional contact with coworkers and the general public.").

## A. The ALJ properly evaluated the medical opinion evidence.

Section 404.1527 of the regulations governs an ALJ's consideration of the medical opinion given by a treating source. See 20 C.F.R. § 404.1527(d). That regulation defines "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the] impairment(s), including ... what [the claimant] can still do despite impairment(s)...." 20 C.F.R. § 404.1527(a)(2). The regulations further explain that "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. See 20 C.F.R. § 404.1513(a)(1)-(5). Finally, the regulations provide that a medical source statement about what a claimant can still do despite his or her impairment(s) should be "based on the acceptable medical source's findings" that are supported by a combination of medical history, clinical findings, laboratory findings, diagnoses, and prognoses. See § 404.1513(b); see also SSR 96–5p, 1996 WL 374183, *4 ("Medical source statements are medical opinions submitted by acceptable medical sources.") (citing § 404.1513(a) and 20 C.F.R. 416.913(a)).

Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527 (2005). Under the treating physician rule, an ALJ must generally give more weight to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2). However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence it should be afforded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th

Cir. 1996) (superseded by statute on other grounds). In such a circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating physician's opinion: (1) length and frequency of treatment relationship; (2) nature and extent of treatment; (3) supportability, consistency, specialization, and (4) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1-6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion. *Carter v. Astrue*, 2011 WL 3273060, at 6 (D. Md. July 27, 2011). In addition, the ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(c)(2).

### Opinion of Dr. Smolak

Plaintiff first contends that substantial evidence does not support the ALJ's decision because the ALJ failed to properly weigh the opinion of Dr. Rebecca Smolak, Plaintiff's treating psychologist.

On May 9, 2012, Dr. Smolak completed a Psychiatric Review Technique Form and a Mental Residual Functional Capacity Assessment pertaining to Plaintiff's treatment between the period of August 2011 and May 2012. Dr. Smolak's review indicated that Plaintiff had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning,

marked difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation, each of extended duration. ECF No. 12 at 857. Dr. Smolak's assessment also found Plaintiff to be "Markedly Limited" in her ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances. Dr. Smolak ultimately concluded that "[Plaintiff] expresses and displays difficulties with memory, concentration, and attention. She has difficulty with leaving her house due to her anxiety and depression. She has difficulty with change and needs routine to assist her with completing daily activities. She is unable to sustain through an eight hour workday." ECF No. 12 at 863.

With regard to Dr. Smolak's opinions, the ALJ assigned little weight, reasoning that, "[the] treatment records from Upper Bay Counseling do not support such level of mental limitation." ECF No. 12 at 21; *see also Id* at 24 ("[the] [m]ental health treatment records (...) do not support Dr. Smolak's opinion.)

An ALJ must give specific weight to the opinion of a treating physician and must sufficiently explain the reasons for the weight given. *See* 20 C.F.R. § 404.1527(c)(2). Here, the ALJ properly articulated the reasoning for her decision to assign little weight to the opinion of Dr. Smolak. In addition, the ALJ's decision contains extensive discussion of clinical findings and treatment records which the ALJ determined to be inconsistent with Dr. Smolak's conclusion that Plaintiff's condition warranted marked functional limitations. *See* ECF No. 12 at 20-26. As the ALJ correctly noted, "[s]uch limitations were not described as marked difficulties in treatment sessions, and according to her reports and medical progress notes, the claimant can perform a range of daily activities. Consultative exams did not indicate significant memory problems." ECF No. 12 at 24.

Inconsistency with other substantial evidence is a valid reason to accord less weight to a physician's opinion. *See Craig*, 76 F.3d at 590. Plaintiff's mental health treatment records supported the ALJ's findings, demonstrating that Plaintiff provided regular care for her grandchildren, changed diapers, performed chores, took care of hygiene, put away clothes, prepared daily meals, drove, managed finances, shopped, ran errands, and visited the bank. The treatment records also indicate that Plaintiff interacted normally with doctors, had regular contact with family, and was able to remember to attend appointments and take medications. Therefore, the ALJ was not obligated to give Dr. Smolak's opinion controlling weight.

### Opinion of Dr. Biondo

Plaintiff next contends that substantial evidence does not support the ALJ's decision because the ALJ failed to properly weigh the opinion of Dr. T. Biondo, Plaintiff's primary care physician.

Dr. Biondo began treating Plaintiff in 2011. On May 9, 2014, Dr. Biondo completed a Medical Assessment of [Plaintiff's] Ability to do Work-Related Activities related to Plaintiff's neck and back pain. *See* ECF No. 12 at 1015. Dr. Biondo opined that, in an 8-hour work day, Plaintiff was limited to one hour of sitting, one hour of standing, one hour of walking, only occasional climbing, crouching, kneeling, pushing, and pulling, and could lift no more than eight pounds. *Id* at 1015-1017. In addition, Dr. Biondo also found the following environmental restrictions: moving machinery, heights, temperature extremes, chemicals, dust, and humidity. *Id* at 1016.

With regard to Dr. Biondo's opinions, the ALJ assigned little weight, reasoning that, "[t]here is nothing in the medical evidence that would substantiate such level of lifting and carrying limitation, or such minimal sitting or standing/walking since December 2012." ECF No.

12 at 26. The ALJ further stated that "[Plaintiff's pain] does not prevent this individual from functioning in everyday activities." *Id.*

An ALJ must give specific weight to the opinion of a treating physician and must sufficiently explain the reasons for the weight given. *See* 20 C.F.R. § 404.1527(c)(2). Here, the ALJ properly articulated the reasoning for her decision to assign little weight to the opinion of Dr. Biondo. In addition, the ALJ's decision contains extensive discussion of clinical findings and treatment records which the ALJ determined to be inconsistent with Dr. Biondo's conclusion that Plaintiff's condition warranted significant limitations in sitting, standing, walking, lifting, or carrying. *See* ECF No. 12 at 20-26. As the ALJ correctly noted, "[s]ome limitations may be present but not in such a degree as to create serious problems in most instances. The pain assessment is consistent with the objective medical evidence" ECF No. 12 at 26.

Inconsistency with other substantial evidence is a valid reason to accord less weight to a physician's opinion. *See Craig*, 76 F.3d at 590. The results of Plaintiff's 2014 clinical examination generally supported the ALJ's findings, demonstrating that Plaintiff exhibited normal muscle tone and bulk and normal, 5/5 strength. ECF No. 12 at 1020-1023. Moreover, the medical evidence indicates that Plaintiff provided regular care for her grandchildren, changed diapers, performed chores, took care of hygiene, put away clothes, prepared daily meals, drove, managed finances, shopped, ran errands, and visited the bank. Therefore, the ALJ was not obligated to give Dr. Biondo's opinion controlling weight.

## B. The ALJ Properly Evaluated the Medical Severity of Plaintiff's Impairments Pursuant to Step Three of the Sequential Evaluation.

At step three of the sequential evaluation, the "listed impairments" step, the ALJ must determine if the claimant's impairment(s) meet or equal one or more of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Where a claimant can show that her condition "meets or

equals the listed impairments," the claimant is entitled to a conclusive presumption that she is disabled within the meaning of the Social Security Act. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *See McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir.1979) (stating that the listings, if met, are "conclusive on the issue of disability."). The burden of proof is on the claimant to show that she meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Particularly relevant to this case is Listing § 1.04A, which specifically notes "degenerative disc disease" as one of the impairments covered under the listing. 20 C.F.R. Pt. 404, Subpt P, App. 1, § 1.04A. Pursuant to Listing § 1.04A, a claimant is entitled to a conclusive presumption that she is disabled if she can show that her disorder results in compromise of a nerve root or the spinal cord. *Id*. To meet the criteria for a presumptive disability under Listing § 1.04A, a claimant must show evidence of nerve root compression characterized by: (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back; (4) positive straight-leg raising test (sitting and supine). *Id*; *See Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013). All of the above-specified criteria must be met in order for a claimant to show that her impairment matches a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In the present case, the ALJ concluded that Plaintiff's impairments were insufficiently severe to satisfy the criteria of Listing § 1.04A because "there was no evidence of nerve root compression, arachnoiditis, or pseudoclaudication, and no evidence that the claimant could not ambulate effectively or could not perform fine and gross movements effectively." ECF No. 12 at 20. "For a claimant to show that his impairment matches a listing, it must meet all of the

specified medical criteria." *Sullivan,* 493 U.S. at 530. An impairment that exhibits only some of the criteria, no matter how severe, does not qualify. *Id.* at 529–32. Listing 1.04A applies to disorders of the spine and is described as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)....

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A.

Plaintiff now contends that "the record contained ample evidence to support a determination that Plaintiff met or equaled Listing 1.04A" and that, pursuant *Radford v. Colvin,* 734 F.3d 288, 295 (4th Cir.2013), the ALJ was required to conduct a comparison of each Listing 1.04A criteria to Plaintiff's symptoms. ECF No. 18 at 24. Specifically, Plaintiff alleges that the ALJ failed to review the medical evidence of: (1) chronic cervical radiculopathy; (2) decreased range of motion bilaterally at the cervical as well as thoracolumbar regions (Dr. Shah); (3) decreased strength in the upper and lower extremity as well as specific muscle weaknesses and deficits (Dr. Shah); and (4) a positive straight leg raise test, 30 degrees bilaterally (Dr. Shah). The ALJ, in Plaintiff's view, ignored this evidence and failed to explain her rationale at Step 3 warranting remand.

Although Plaintiff insists that, contrary to the ALJ's finding, the record contains ample evidence of spinal cord compression, her medical records did not indicate compression or impingement of the spinal cord, as required to meet Listing 1.04A. Plaintiff points to her May 2012 Union Hospital Emergency Room records indicating that she exhibited symptoms in

13

support of a clinical impression for "acute neck pain exacerbation of chronic cervical radiculopathy." As the ALJ properly noted in her decision, however, "[t]here was no record of follow-up for this complaint" and Plaintiff's symptoms were accordingly treated with pain medication. *See* ECF No. 12 at 19. Likewise, the 2012 medical findings of Dr. Raza Shah, M.D., with regard to Plaintiff's strength deficits, decreased range of motion, and positive straight leg raises were assigned little weight by the ALJ in the subsequent RFC due to the lack of objective evidence in support of those findings. Plaintiff did not receive any further treatments for neck pain until shortly before her hearing in April of 2014. During that treatment, Dr. B. Rami, M.D. observed tenderness in the cervical and lumbar spines with intermittent pain radiation into the extremities, however, an MRI of Plaintiff's cervical spine revealed no evidence of cervical radiculopathy or compressed nerve root. An additional May 2014 MRI of Plaintiff's lumbar spine showed evidence of an anterior fusion with the disc spacer located at L4-5 and mild midline local disc protrusion at L3-4 yet again no evidence of nerve root compression was noted.

Nonetheless, Plaintiff argues that the ALJ ran afoul of *Radford* by failing to conduct a criterion-by-criterion evaluation of the applicability of Listing 1.04A to Plaintiff's symptoms. In *Radford*, the Fourth Circuit found an insufficient basis to evaluate the ALJ's Listing 1.04A determination where the ALJ's explanation provided no comparison of the claimant's symptoms to the listing criteria and instead simply relied upon the state medical examiner's conclusion that the claimant failed to meet that listing. *Radford,* 734 F.3d at 295-96. The *Radford* court found that a full explanation by the ALJ was particularly important because of probative evidence that the plaintiff did meet or equal that listing, alluding to the "depth and ambivalence of the medical record." *Id.*

14

Here, unlike in *Radford*, the ALJ provided a substantive explanation for her listing determination and that explanation was supported by the evidence in the record. Moreover, the record in the present case did not include ample probative evidence indicating that Plaintiff might have met or medically equaled Listing 1.04A. "[An] ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." *Kelly v. Astrue*, No. 5:08–CV–289–FL, 2009 WL 1346241, at *5 (E.D.N.C. 12 May 2009) (citations omitted) (citing *McCauley v. Colvin,* No. 7:12–CV–311–D, 2013 WL 7098724, at *9 (13 Dec. 2013). Therefore, in light of the lack of evidence in the medical record related to nerve root compression, the Court finds that the ALJ made sufficiently clear the reasons for her determination that Plaintiff did not meet or medically equal Listing 1.04A.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Social Security Act. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 18) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 21) is GRANTED, and the decision of the Social Security Administration is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 10/31/16

A.  David Copperthite
United States Magistrate Judge